**In re Roy VOIGHT and Willene Voight, d/b/a Voight Jewelry, Debtors.**

**Thomas J. GRIFFITH, Trustee, Plaintiff,**

**v.**

**SOUTHWESTERN BELL TELEPHONE COMPANY, Defendant.**

**In re IMPACT PUBLICATIONS, INC., Debtor.**

**Thomas J. GRIFFITH, Trustee, Plaintiff,**

**v.**

**SOUTHWESTERN BELL TELEPHONE COMPANY, Defendant.**

**Bankruptcy Nos. 581–00068 and 580–00068.**
**Adv. Nos. 582–0059 and 582–0065.**

United States Bankruptcy Court, N.D. Texas, Lubbock Division.

Dec. 1, 1982.

Thomas J. Griffith, Lubbock, Tex., for Thomas J. Griffith, trustee.

Jerry R. Tucker, Sr., Legal Dept., Southwestern Bell, San Antonio, Tex., for Southwestern Bell Telephone Co.

## MEMORANDUM AND ORDER

BILL H. BRISTER, Bankruptcy Judge.

The trustee filed complaint against Southwestern Bell Telephone Company in each of the above adversary proceedings, seeking to recover "deposits" which had been paid by each debtor, exemplary and punitive damages, interest, and attorneys fees. The defendant telephone company acknowledged that "deposits" were paid by each debtor, but denied that those "deposits" were "property of the estate" within the meaning of § 541 of the Bankruptcy Code at any time relevant to these adversary proceedings. The adversary proceedings were consolidated for nonjury trial.

As a condition precedent to furnishing telephone service to each of the debtors in each case, the telephone company required each debtor to make payments to it which, according to the rules and regulations of the telephone company contained in its General Exchange Tariff (its contract with its customers) are called "deposits." That tariff provides, in pertinent part:

"If it is deemed necessary by the telephone company in safeguarding its interests, applicants for service or present customers may be required to make a deposit of an amount not to exceed two months' exchange service charges plus two months' estimated long distance service charges, to be applied in payment of any unpaid charges for exchange or long distance service which may be rendered. Simple interest at the rate of 6% per annum will be paid on deposits held 30 days or more...."

Not all customers are required to make the deposits and considerable discretion rest with the telephone company as to whether a deposit will be required from a particular customer and, if one is required, the amount thereof. For instance the tariff provides that an applicant for service, or an existing customer, may satisfy a deposit requirement by providing a contract of guaranty in an amount not less than the requested deposit from an existing customer "acceptable to the telephone company." Also the tariff provides that if a customer has paid bills for service for twenty four consecutive commercial or industrial billings without having been delinquent in the payment of current bills on more than two occasions the telephone company will refund the "deposit."

However, the tariff further provides that if the customer is delinquent in paying his bill on more than two occasions the money is not refunded unless and until that depositor's telephone services have been disconnected and all bills for service have been paid.

The evidence in these consolidated cases reflects that Voight Jewelry had deposited with the telephone company the sum of $100.00 in April 1976 and the additional sum of $65.00 in January 1978, for total deposits of $165.00. Impact Publications had deposited the sum of $1,110.00 in September 1978 and the additional sum of $1,275.00 in June 1980, for total deposits of $2,385.00. Those deposits, and the interest accrued thereon, are the subjects of this memorandum.

Although there is no apparent dispute between the parties concerning the fact that those deposits were made by each of the debtors, there is considerable disagreement between the parties as to the legal status of those payments in the possession of the telephone company. In that regard it should be noted that the word "deposit" commonly refers to money or other property which is lodged with a person as security for the performance of some contract, usually to be forfeited if the depositor fails in his undertaking. In that event the "deposit" is normally segregated in a separate account and operates as a common law pledge. A deposit, so segregated and held in trust, could place the holder thereof in a substantially unassailable secured position. However, the telephone company does not so segregate its customers' deposits.

The telephone company acknowledged at trial that those deposits which it obtains from its customers are deposited in its general operating account. A code number is assigned to that deposit in order that the amount so deposited by a particular customer can be determined by the telephone company when that information is desired. However, in no other manner are the monies so deposited by a customer capable of being identified after they are commingled with the other monies in the general accounts of the telephone company.

In these cases the trustee claims that after he qualified as trustee he requested that the telephone company furnish to him an accounting for the deposits by each debtor. He alleges that not only has the telephone company refused to account for the deposits, but that until these adversary proceedings were filed its employees have persistently refused to acknowledge that the deposits were ever made. He contends that the telephone company has not singled him out as one to whom no accounting will be furnished, but that it does not send periodic reports of status, nor in any other manner account, to any of its depositing customers and that thus it has been able to finance its operations with involuntary loans from its customers and to "mulct the consuming public of vast sums of money in unaccounted for deposits." He argues that the telephone company has thus perpetrated a fraud on the public, including the estate of each of the debtors, for which it should respond with exemplary and punitive damages of $100,000.00. Finally, he says that the telephone company has attempted to "setoff" the deposits against debts allegedly owed to it by each debtor, that it failed to seek and obtain court authority prior to making the purported "setoff," that it has filed no proof of claim in either bankruptcy case, that the time for filing proofs of claim has expired, and that it is now too late for the telephone company to assert any setoff rights.

In response the telephone company admits that deposits, including those received from each debtor in these cases, are deposited in its general operating account. Also it admits that it did not seek leave to setoff the deposits and contends that it had no obligation to seek leave to setoff. The thrust of its position is that each time a customer paid the demanded "deposit," those monies so paid were advance payments for telephone services and thus, at the time each payment was made, the monies so paid became the money of the telephone company to use as it chooses. It claims that each of the debtors was delinquent in paying current bills on more than

two occasions and therefore neither debtor had right to refund until services were terminated and all bills for services had been paid. It argues that the final bill of neither debtor was paid and therefore the condition precedent to changing ownership of the deposit from the telephone company to the respective debtor has not occurred. The telephone company argues that by virtue of the fact that it has at all relevant times owned the deposits it is required to neither file proof of claim nor to seek leave of the court to setoff.

■ I am not persuaded by the argument of the telephone company that the subject deposits were in fact monies paid to it for future services and are not "property of the estate" within the meaning of § 541 of the Code. When consideration is given to the fact that the depositor is required by the tariff to timely pay current bills under threat of suspension or termination of service and the fact that the telephone company does have, and exercises, the right to suspend or terminate service for nonpayment of current bills one can reasonably conclude that the purpose of the deposit is to have monies available by which the telephone company can setoff the final bill. As mentioned above if those deposits had been held by the telephone company as a common law pledge by segregating and holding the deposits in trust the telephone company would inhabit a stronger position. However, where the telephone company has commingled the deposits with its general accounts the status becomes that of a creditor-debtor relationship. *See Central Power and Light Company v. State,*[1] 410 S.W.2d 18 (Tex.Civ.App.—Corpus Christi, 1966), cert. den. 389 U.S. 933, 88 S.Ct. 297, 19 L.Ed.2d 286. Thus each debtor was an unsecured creditor of the telephone company for the amount of the deposits, with interest, and the telephone company was an unsecured creditor of each debtor for the amount of the final bill for services.

■ The fact that the commingling of the deposits by the telephone company transferred the legal status of the parties to that of unsecured creditor-debtor does not mean that the telephone company loses all rights in the deposits. With limitations mutual debts which arose before the commencement of the case may be set off. 11 U.S.C. § 553(a). One of those limitations is provided by § 362 of the Bankruptcy Code which states that upon the filing of a bankruptcy petition a stay or injunction is placed upon all entities whose actions may impair the debtor's estate. Specifically, § 362(a)(7) places a stay on any setoff of any debt owing to the debtor that arose before the commencement of the case against any claim against the debtor. Under § 362(a)(7) a creditor is not able to unilaterally setoff after the petition is filed, but must request relief from the stay in accordance with the provisions of § 362(d). That latter section provides that the stay can be terminated or modified for cause, including lack of adequate protection, or if the debtor has no equity in the property and the property is not necessary to an effective reorganization. Therefore, although setoffs are stayed under § 362(a)(7) a creditor may petition for relief from the stay in order to setoff mutual debts. However, prior court approval is mandated by the Code and actions taken in violation of the automatic stay are void and of no effect. As mentioned earlier the telephone company did not seek leave to setoff and, in fact, has eschewed the opportunity to belatedly seek that leave to setoff by its pleadings in these adversary proceedings. The legal effect of that failure of the telephone company to first seek leave to setoff is different for each of the two cases.

■ Voight Jewelry had filed petition for order for relief under Chapter 7 of Title 11, United States Code, on July 16, 1981. Thereafter, on August 6, 1981, the tele-

---

1. Central Power and Light was later discussed and limited by the Texas Supreme Court in *State v. Liquidating Trustees of Republic Petroleum Company,* 510 S.W.2d 311 (Tex.1974). However, the limitation by the Supreme Court applied only to the opinion's discussion of escheat practices between two states and the lower court's discussion on commingling appears to remain valid.

phone company issued a final bill for service through July 22, 1981. The charges on the final bill totalled $1,022.53. The telephone company applied credits totalling $475.44 (including the deposits of $165.00, interest on the deposits of $45.71, and precharged expenses for directory advertising, use of equipment, and other advanced charges of $264.73) leaving a deficiency of $547.09. Regardless of the argument of the telephone company to the contrary, the application of the credits for deposits and interest was a post-petition setoff for which leave of the court was not sought by the telephone company and the attempted post-petition setoff is void. I conclude, therefore, that the trustee should recover from the telephone company the deposits of $165.00 with interest of $45.71.

■ Impact Publications filed its petition for order for relief under Chapter 7 on August 26, 1980. However service on its telephone had been disconnected twelve days earlier on August 14, 1980. Its final bill dated August 25, 1980, reflected total charges of $3,043.19 and credits of $2,759.13 (including deposit of $2,385.00, interest on deposits of $143.44, and other credits for advanced charges totalling $230.69) leaving a deficiency of $284.06. Unlike Voight, however, the credits were applied by the telephone company one day prior to the filing of the bankruptcy petition. Prepetition setoffs where there is no improvement of position and which are otherwise within the terms of the Code do not constitute a preference under § 547. Nevertheless § 553 of the Code continues the prohibitions against prepetition setoff of claims that have the earmarks of a preference. The setoff allowance provisions of § 553(a) have three exceptions. First, no setoff is permitted if setoff is disallowed under § 502 of the Code. Second, no setoff is permitted if the claim was transferred by an entity other than the debtor either before the commencement of the case or after ninety days before the filing and while the debtor was insolvent. Finally, no setoff is permitted if the debt owed to the debtor by the creditor was incurred by the creditor after ninety days before the filing, while the debtor was

insolvent, and in order to obtain a right of setoff against the debtor. The third exception to the setoff allowance becomes material in this proceeding. As noted above the petition was filed by Impact on August 26, 1980. On an unspecified date in June 1980, but obviously within ninety days of the filing of the petition, Impact deposited an additional sum of $1,275.00 with the telephone company. A presumption of the debtor's insolvency during the ninety days before filing is created by § 553(c) of the Code and the burden of going forward on the issue of solvency at the time of transfer lies with the creditor. The telephone company did not challenge the debtor's insolvency during that ninety day period. The three elements of the third exception to the allowance of setoff are present in the Impact proceeding and to the extent of $1,275.00 the telephone company thus improved its position within the ninety day period next preceding the filing of the petition. The application of that portion of the deposit should be avoided and recovered by the trustee. I conclude, therefore, that the trustee should recover the deposit of $1,275.00 with interest from June 1, 1980, from the telephone company.

The trustee contends that, in addition to the recovery of the deposits, he should recover exemplary and punitive damages from the telephone company in each proceeding, because it persistently refused to respond to his repeated entreaties for an accounting of the deposit, that it never accounts to its customers for deposits and sends no periodic reports or accounts to the customer, that in that manner it has accumulated vast sums of money in failing to account for deposits that are either forgotten by the consumer or never demanded on account of death, bankruptcy, and similar calamity, and that therefore the telephone company has willfully perpetrated a fraud.

■ The evidence at the hearing did indicate that the telephone company was a bit cautious in responding to the trustee's inquiries. The trustee, when appointed under the Code, is entitled to receive an

accounting from the telephone company for any monies which it holds pertaining to a debtor's account. The trustee's demands for an accounting were properly made and considerable hyperbole would have been avoided if the telephone company would have timely furnished to him the requested information. However, the failure of the telephone company to respond to the trustee's proper demands for accounting in these cases, while undoubtedly frustrating to the trustee, does not merit an award of exemplary or punitive damages. Concerning the allegations that the telephone company has perpetrated a fraud by accumulating and withholding vast sums of money from deposits where no accounting was ever demanded, the telephone company, in response to interrogatories, acknowledged that no deposits have escheated to the State of Texas in the immediately preceding ten year period. That evidence does not establish the existence of fraudulent conduct. Finally, the fact that the telephone company setoff deposits without having first obtained leave of the court, without more, does not establish entitlement to punitive damages. If the creditor's setoff actions are not especially egregious, punitive damages are inappropriate for violations of the automatic stay. *Dutton v. Fort Monmouth Federal Credit Union,* 15 B.R. 318, 322 (Bkrtcy.D. NJ 1981).

While punitive damages might not be appropriate for the violation of the stay, civil and criminal contempt sanctions may be imposed against a creditor who violates the stay. *In re Norton,* 15 B.R. 623 (Bkrtcy.E.D.Pa.1981); *In re Eisenberg,* 7 B.R. 683 (Bkrtcy.E.D. NY 1980). Civil contempt remedies fall into two broad categories. They are remedial in that their purpose is to make a recalcitrant party comply with an order of the court. They are compensatory in that their purpose is to reimburse an injured party for losses and expenses incurred because of the adversary's noncompliance. Both categories are applicable to the proceedings in the Voight case. The court has discretion to order payment by the telephone company of the reasonably necessary out-of-pocket expenses of the debtor, including reasonable attorney's fees, occasioned by the failure of the telephone company to observe the automatic stay. The automatic stay was violated only in the Voight Jewelry case. I find that the telephone company should pay to the attorney for the debtor the sum of $300.00 for his reasonable attorney's fees in the Voight adversary proceeding.

It is, therefore, ORDERED by the Court that the trustee do have and recover of and from Southwestern Bell Telephone Company in adversary number 582–0059 (the Voight Jewelry case) the sum of $210.71, being the deposit of $165.00 and interest on that deposit of $45.71.

It is further ORDERED by the Court that the attorney for the trustee do have and recover of and from Southwestern Bell Telephone Company in adversary number 582–0059 (the Voight Jewelry case) reasonable attorney's fees of $300.00.

It is finally ORDERED by the Court that the trustee recover of and from Southwestern Bell Telephone Company in adversary number 582–0065 (the Impact Publications case) the sum of $1,275.00 with interest at the rate of 6% per annum from June 1, 1980.

Interest on each sum so ordered recovered by the trustee or by the attorney for the trustee shall bear interest from date of judgment to be entered herein at a rate equal to the coupon issue yield equivalent of the average accepted auction price for the last auction of Fifty Two Week United States Treasury Bills settled immediately prior to the date of judgment. That interest rate on November 26, 1982, the date of auction immediately preceding this date, was 9.07%.

LET JUDGMENT BE ENTERED ACCORDINGLY.

The Clerk is directed to file this memorandum and order and to furnish a copy to each attorney of record.