In re NAUDAIN, INC., formerly known as Brooks Shoe Manufacturing Company, Inc., et al., Debtors.

BROOKS SHOE MANUFACTURING COMPANY, INC., Plaintiff,

v.

UNITED TELEPHONE COMPANY, Defendant.

Bankruptcy No. 81–04333G.
Adv. No. 82–0669G.

United States Bankruptcy Court,
E.D. Pennsylvania.

Sept. 21, 1983.

Kathryn R. Heidt, Duane, Morris & Heckscher, Philadelphia, Pa., for debtor/plaintiff, Naudain, Inc., formerly known as Brooks Shoe Manufacturing Company, Inc., et al.

J. Gregg Miller, Barbara H. Sagar, Pepper, Hamilton & Scheetz, Philadelphia, Pa. and Daniel T. Dineen, United Telephone Co. Legal Department, Carlisle, Pa., for defendant, United Telephone Co.

Adelman, Lavine, Krasny, Gold & Levin, Philadelphia, Pa., for the Creditors' Committee.

## OPINION

EMIL F. GOLDHABER, Bankruptcy Judge:

In the case *sub judice,* the debtor, relying on section 553(a)(3) of the Bankruptcy Code ("the Code"), seeks the return of a deposit,

which it delivered to the defendant prior to having filed its petition for reorganization under chapter 11 of the Code, in order to secure payment for future telephone charges. Because the record establishes that the sole purpose of the deposit was to have monies available by which the defendant could setoff future bills of the debtor, we conclude that the debtor is entitled to recover the deposit in question.

■ The facts of the instant case have been stipulated by the parties and are as follows:[1] On or about September 1, 1981, after sometimes failing to receive timely payments from the debtor during the preceding two-year period and having learned that the debtor was experiencing financial difficulties, the United Telephone Co. ("United Telephone") requested the debtor to make a deposit for future telephone services. United Telephone was referred by the debtor to Hempstead Bank ("the bank"), and the former thereupon requested the bank, a secured creditor of the debtor, to make a deposit on the debtor's behalf. The original amount requested for the deposit was $20,000.00, but United Telephone subsequently reduced the requested amount of the security deposit to $15,000.00, which amount ("the deposit") was to be held as security for future local and toll services of the debtor.

As of September 1, 1981, there was outstanding proximately $92.00 in unpaid charges. The debtor and the bank were also advised at this time that failure to remit the deposit to United Telephone by September 8, 1981, would result in disconnection and termination of all telephone services. This deadline was subsequently extended to September 11 and the debtor promised to pay the deposit on or before that date. The debtor agreed to pay the deposit in order to insure continued telephone service. The debtor and United Telephone intended that United Telephone could apply the deposit against future amounts owing to United Telephone by the debtor in the event the debtor failed to pay such amounts to United Telephone.

On September 11, 1981, United Telephone advised the bank that it would disconnect the service at 3:00 or 3:30 p.m. if it had not received the debtor's deposit by that time. At approximately 1:00 p.m., United Telephone was informed by a representative of the bank that the funds had been wire transferred to United Telephone, via United Telephone's account with its bank, the account numbers of which had been furnished to the bank for the purpose of the wire transfer. United Telephone reconnected and reinstituted service shortly before 5:00 p.m. after its bank informed it that the bank had received the deposit of $15,000.00 by means of the wire transfer.

On October 23, 1981, Brooks filed a petition for reorganization under chapter 11 of the Code. On or about October 30, 1981, United Telephone received a formal notice that a bankruptcy petition had been filed by the debtor, that a first meeting of creditors had been scheduled and that certain acts and proceedings against the debtor and its property were stayed pursuant to section 362(a) of the Code.

During the period from September 12, 1981, through October 23, 1981, the debtor incurred charges to United Telephone in the total amount of $15,343.64 for telephone services provided by United Telephone to the debtor ("the charges"). As of October 23, 1981, the total amount of the deposit plus interest thereon at a rate of 6% per annum was $15,170.00. In early November, 1981, counsel for the debtor contacted United Telephone for the purpose of making a post petition deposit pursuant to section 366 of the Code.[2] United Telephone thereupon

---

1. This opinion constitutes the findings of fact and conclusions of law required by Bankruptcy Rule 7052 (effective August 1, 1983).

2. Section 366 of the Code provides:
   (a) Except as provided in subsection (b) of this section, a utility may not alter, refuse, or discontinue service to, or discriminate against, the trustee or the debtor solely on the basis that a debt owed by the debtor to such utility for service rendered before the order for relief was not paid when due.
   (b) Such utility may alter, refuse, or discontinue service if neither the trustee nor the debtor, within 20 days after the date of the

requested a deposit of $8,000.00. Counsel for the debtor suggested that United Telephone keep $8,000.00 of the deposit and return $7,000.00 to the debtor. United Telephone declined this suggestion and the debtor paid a deposit of $8,000.00 to United Telephone for post-petition service in order to assure continuing telephone service.

On or about November 19, 1981, United Telephone applied the deposit plus accrued interest thereon to the charges, thereby reducing the pre-petition obligation of the debtor to United Telephone by $15,170.00. This application was made pursuant to the standard internal accounting procedures of United Telephone and the debtor was subsequently notified that said application had been made. On February 11, 1982, counsel for the debtor demanded, in writing, the return of the deposit. On March 22, 1982, Brooks instituted this adversary action against United Telephone in order to recover the $15,000.00 deposit and to have United Telephone held in contempt for violating the automatic stay provisions of sections 362(a)(6) and (a)(7) of the Code.[3] On May 19, 1982, United Telephone notified the debtor that it: (1) had reversed its accounting procedures relating to the application of the deposit; (2) was holding the deposit; and (3) would not take any further action concerning the deposit until it received guidance from the Bankruptcy Court. The amount of the deposit held by United Telephone, as of May 19, 1982, had increased to $16,080.20 as a result of the inclusion of additional interest. Since September 12, 1981, United Telephone has continuously held the money constituting the deposit in its possession except for the period of ap-

proximately November 12, 1981, through May 19, 1982, during which time such money had been applied by United Telephone to the charges.

The debtor challenges United Telephone's application of the deposit to the charges as being an impermissible setoff under section 553(a)(3) of the Code, which provides:

(a) Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case, except to the extent that—

\*    \*    \*    \*    \*    \*

(3) the debt owed to the debtor by such creditor was incurred by such creditor—

(A) after 90 days before the date of the filing of the petition:

(B) while the debtor was insolvent: and

(C) for the purpose of obtaining a right of setoff against the debtor.

11 U.S.C. § 553(a)(3) (1979).

United Telephone contends that the application of the deposit to the charges was not an impermissible setoff because the deposit does not constitute a debt owed by United Telephone to the debtor. Rather, United Telephone argues that the deposit, which was given to United Telephone to secure the debtor's obligation to pay for future telephone services, should be characterized as collateral for which United Tele-

order for relief, furnishes adequate assurance of payment, in the form of a deposit or other security, for service after such date. On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment.

11 U.S.C. § 366 (1979).

**3.** Sections 362(a)(6) and (a)(7) of the Bankruptcy Code provide:

(a) Except as provided in subsection (b) of this section, a petition filed under section

301, 302, or 303 of this title operates as a stay, applicable to all entities, of—

\*    \*    \*    \*    \*    \*

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and

\*    \*    \*    \*    \*    \*

11 U.S.C. § 362(a)(6); § 362(a)(7) (1979).

phone obtained a security interest therein pursuant to the Uniform Commercial Code.[4]

However, the parties have specifically stipulated that they "intended that United Telephone could apply the deposit against future amounts owing to United Telephone by Brooks in the event Brooks failed to pay such amounts to United Telephone."[5] Moreover, United Telephone, in its memorandum of law, acknowledges that the deposit was acquired solely for the purpose of being applied against future unpaid bills of the debtor.[6] In light of the foregoing, we conclude that an intent to apply a money deposit against an obligation does not evidence an intent to create a security interest in the money but rather evinces an intention to merely create a right of setoff.[7]

Furthermore, we are convinced that the deposit constitutes a "debt" within the meaning of the Code. A "debt" is defined by the Code as "liability on a claim." 11 U.S.C. § 101(11) (1979). A "claim" is defined by the Code as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured...." 11 U.S.C. § 101(4) (1979). The security deposit in question was paid directly to United Telephone and United Telephone held the deposit for its own use.[8] In the event the debtor paid its phone bills in full or in part, United Telephone had an obligation to pay the debtor all or a portion of the deposit. Consequently, we conclude that the debtor possessed a "right of payment" even though said right may have been contingent upon the debtor's fulfillment of its obligations to United Telephone.[9]

United Telephone contends additionally that section 553(a)(3) only prohibits the setoff of a debt which a creditor incurs to a debtor for the purpose of obtaining a right

---

**4.** In a similar situation, the court in *Griffith v. Southwestern Bell Telephone Company (In re Voight)*, 24 B.R. 983 (Bkrtcy.N.D.Tex.1982), stated:

> When consideration is given to the fact that the depositor is required by the tariff [as is the debtor in the instant case] to timely pay current bills under threat of suspension or termination of service and the fact that the telephone company does have, and exercises, the right to suspend or terminate service for nonpayment of current bills one can reasonably conclude that the purpose of the deposit is to have monies available by which the telephone company can setoff the final bill. As mentioned above if those deposits had been held by the telephone company as a common law pledge by segregating and holding the deposits in trust the telephone company would inhabit a stronger position. However, where the telephone company has commingled the deposits with its general accounts the status becomes that of a creditor-debtor relationship (citations omitted). Thus each debtor was an unsecured creditor of the telephone company for the amount of the deposits, with interest, and the telephone company was an unsecured creditor of each debtor for the amount of the final bill for services.

24 B.R. at 986.
In the instant case, United Telephone has not established that it segregated the debtor's deposit in a separate account.

**5.** Under Pennsylvania law, a setoff is accomplished when a creditor gives "sufficient evidence of intent" to make a setoff. *See Goldstein v. Jefferson Title and Trust Co.*, 95 Pa.Super. 167, 170 (1928).

**6.** *See* United Telephone's memorandum of law at 14.

**7.** Section 9104 of the Pennsylvania Commercial Code specifies that division 9 (Secured Transactions) of the Commercial Code does not apply to any right of set-off. *See* 13 Pa.Cons. Stat.Ann. § 9104(9) (Purdon Pamphlet 1983).

**8.** In the case of *In re Shepherd*, 17 B.R. 278 (Bkrtcy.E.D.Pa.1982), this court held that where a tenant's security deposit was placed in an escrow account subject to the interests of both the landlord and the debtor, no debt ever arose from the landlord to the debtor and, consequently, the assertion by the landlord of his rights in the escrow fund was not a setoff within the confines of § 553(a)(3) of the Code.

**9.** In this regard, we note that section 542(b) of the Code provides:

> (b) Except as provided in subsection (c) or (d) of this section, an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor.

11 U.S.C. § 542(b) (1979).

of offset against an *antecedent* debt owed by the debtor to such creditor. Since it is undisputed that the subject deposit was incurred solely for the purpose of being applied against the debtor's *future* unpaid bills, United Telephone argues that section 553(a)(3) does not prohibit it from offsetting the deposit against the charges. United Telephone maintains that section 553(a)(3) was intended to be a codification of prior case law developed under the former Bankruptcy Act ("the Act") which disallowed certain bank setoffs that could be considered preferences under the preference section of the Act, which required that the preferential transfer be on account of an antecedent debt.[10] As a codification of such prior law, United Telephone contends that section 553(a)(3) was intended *only* to reach setoffs that would have been prohibited as unlawful preferences under the Act. In other words, United Telephone argues that the type of debt which section 553(a)(3) prohibits from being offset is a debt which has been incurred by a creditor in order to be offset against an *antecedent* debt which the debtor owed to the creditor.

First and foremost, section 553(a)(3) itself contains no requirement that the offset be against a debt that is antecedent. Moreover, the fact that section 553(a)(3) may have been a codification of pre-Code cases that dealt mainly with the situation where a bank took a deposit and set it off against an antecedent debt owed by the debtor hardly stands for the proposition that section 553(a)(3) is applicable only when a debt

is incurred by the creditor in order to offset said debt against an antecedent debt owed by the debtor to the creditor.[11] Consequently, we will grant the debtor's amended complaint to recover the subject deposit.[12]

■ Finally, it is undisputed that United Telephone violated the automatic stay provisions of section 362(a) of the Code by applying the deposit (plus the accrued interest thereon) to the charges.[13] The question becomes whether to hold United Telephone in contempt for so violating the stay. United Telephone applied the deposit to the charges in November, 1981, but on May 19, 1982, some five (5) months later, it "reversed its accounting procedures" and notified the debtor that it would continue to hold the deposit pending our determination of the instant action. Consequently, United Telephone argues that it has restored the status quo and that it has acknowledged our power over this matter and should therefore not be held in contempt.

■ While United Telephone wilfully executed the offset with full knowledge that the debtor had filed a petition under chapter 11 of the Code and without seeking relief from the stay, we choose not to hold United Telephone in contempt. "[C]ivil contempt ... sanctions ... are designed to restore the *status quo* which existed prior to the violation of the judicial order." *James Earl Houdashell and Dorothy Louise Houdashell v. Missouri Public Service Company* (*In re Houdashell*), 7 B.R. 901, 902 (Bkrtcy.

---

**10.** The Bankruptcy Act has been superseded by the Bankruptcy Code as of October 1, 1979. The Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, § 403, 92 Stat. 2683 (1978).

**11.** "This provision [§ 553(a)(3)] represents a codification of case law, and is intended to cover the problem of setoff of bank deposits made by the debtor within the 90 days prior to bankruptcy." 4 Collier on Bankruptcy ¶ 553.-08, at 553–44 (15th ed. 1983). However, Collier's also provides that "[t]he circumstances under which this prohibition of setoff exists [§ 553(a)] are those implying that the creditor attempted to obtain a preference or put itself in a preferred position relating to other creditors. *Id.*

**12.** In addition, we will disallow any claim which United Telephone may have against the debtor pursuant to § 502(d) which provides:

(d) Notwithstanding subsections (a) and (b) of this section, the court shall disallow any claim of any entity from which property is recoverable under section 542, 543, 550, or 553 of this title or that is a transferee of a transfer avoidable under section 552(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of this title.

11 U.S.C. § 502(d) (1979).

**13.** *See* §§ 362(a)(6) and (a)(7) cited in note 3 *supra*.

W.D.Mo.1981). We find it dispositive that United Telephone has reversed the offset and now stands ready to dispose of the deposit, in which United Telephone asserts an interest, in accordance with our order.[14]

14. As a final matter, United Telephone contends that it should be entitled to retain the deposit even if the deposit is deemed to have been incurred in violation of § 553(a)(3) because it gave new value to the debtor in the form of telephone services after the receipt of the deposit in accordance with § 547(c)(4) which provides:

(c) The trustee may not avoid under this section a transfer—
*  *  *  *  *  *
(4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—

(A) not secured by an otherwise unavoidable security interest; and
(B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor;
*  *  *  *  *  *
11 U.S.C. § 547(c)(4) (1979).
However, we do not construe a deposit as being a transfer of property since it does not constitute a parting with property by the depositor but instead creates a debt owed to the depositor. Therefore, we conclude that § 547(c)(4) is inapplicable to the instant case.