### In re MINER INDUSTRIES, INC., Debtor.

### Arnold L. BLASBALG, Trustee, Plaintiff,

v.

### The NARRAGANSETT ELECTRIC COMPANY, Defendant.

Bankruptcy No. 88–00097
Adv. No. 89–1078.

United States Bankruptcy Court, D. Rhode Island.

Sept. 12, 1990.

Thomas S. Hemmendinger, Strauss, Factor, Hillman & Lopes, Providence, R.I., for trustee.

Carl D. Aframe, Worcester, Mass., for The Narragansett Elec. Co.

## DECISION AND ORDER

ARTHUR N. VOTOLATO, Jr.,
Bankruptcy Judge.

Heard on June 13, 1990 on the Trustee's Complaint to recover as a preferential transfer, a $26,818.34 payment to Narragansett Electric Company ("Narragansett"), made within ninety days of the filing

---

1. This opinion constitutes our findings of fact and conclusions of law. *See* Bankruptcy Rule 7052 and Fed.R.Civ.P. 52.

2. In Count II of his Complaint, the Trustee alleges that $4,028.85 was improperly offset by Narragansett within ninety days preceding the filing

of the bankruptcy petition. In their Joint Pretrial Order, the parties have stipulated [1] that a prima facie case exists under Section 547(b) with respect to the $26,818.34 payment, and that the issue they wish to have decided is whether the Section 547(c)(2) "ordinary course of business" defense applies, putting this payment beyond the reach of the Trustee. The Trustee also requests the return of $1,069.95, pursuant to 11 U.S.C. § 553(b) [2], as an improper, pre-petition setoff by Narragansett. In response to the Trustee's claim of setoff under Section 553(b), Narragansett argues that its application of the debtor's security deposit constitutes a recoupment rather than setoff, which would entitle the creditor to retain the funds.

## SETOFF OR RECOUPMENT?

11 U.S.C. § 553(b) entitled "Setoff", provides in relevant part that:

Except with respect to a setoff of a kind described in section 362(b)(6), 362(b)(7), 365(h)(2), or 365(i)(2) of this title, if a creditor offsets a mutual debt owing to the debtor against a claim against the debtor on or within 90 days before the date of the filing of the petition, then the trustee may recover from such creditor the amount so offset to the extent that any insufficiency on the date of such setoff is less than the insufficiency on the later of—

(A) 90 days before the date of the filing of the petition; and

(B) the first date during the 90 days immediately preceding the date of the filing of the petition on which there is an insufficiency.

In this matter, the first insufficiency within the 90 days preceding the filing of the debtor's petition occurred on November 17, 1987, in the amount of $1,069.95, when Miner owed Narragansett $34,028.85, and

---

of the petition, in violation of section 553(b). In his trial memorandum, however, the Trustee reduced this amount to $1,069.95. Since no issue has been made of this discrepancy, we consider the Trustee's request as to Count II to be in the amount of $1,069.95.

the security deposit totalled $32,958.90. Thereafter, on January 21 and 26, 1988, Narragansett effected two unilateral transactions. First, Narragansett applied the accrued interest on the security deposit to Miner's outstanding balance, and then it applied the $30,000 deposit itself. The Trustee argues that since neither of these actions by the creditor resulted in an insufficiency [3], pursuant to Section 553(b), he is entitled to recover $1,069.95.

Narragansett disagrees with the Trustee's analysis, arguing that this is a classic example of recoupment, and not setoff. In support, Narragansett cites *Brooks Shoe Manufacturing Company, Inc. v. United Telephone Company*, 39 B.R. 980 (E.D.Pa. 1984): In that case, which also involved a security deposit with a utility (there the telephone company), the District Court for the Eastern District of Pennsylvania held that the telephone company's application of the security deposit to the debtor's outstanding bills for telephone service was in the nature of recoupment. "[T]he distinction is between truly independent debts, which give rise to setoff rights, and reciprocal obligations arising from the same transaction or series of transactions, which give rise to recoupment...." and, "[v]iewed realistically, the creation of the Deposit on September 11, 1981, seems virtually indistinguishable from the debtor's having paid in advance for its telephone service. There can be no question that the debtor was entitled to incur, and pay for, telephone service during the immediate prebankruptcy period, so long as the charges for such service were incurred in the ordinary course of the debtor's business." *Id.* at 982. The Court went on to say that:

> [d]eposits as security for payment for future services are commonly required, in appropriate circumstances, by public utilities, landlords, and many other entities. To treat these transactions as merely laying the groundwork for preferential setoffs would, in the case of a public utility for example, expose the utility to the risk of being unable to obtain payment of its bills, should bank-

ruptcy ensue within 90 days of the deposit. In turn, this would leave the utility little choice but to terminate service instead—an outcome which the Bankruptcy Court surely does not contemplate. Indeed, such a result would no doubt force into bankruptcy many firms which could avoid that step if permitted to operate normally during periods of financial difficulty. *Id.* at 983.

We agree with the *Brooks* holding, and the rationale that because the creditor's claim "arises from the same transaction as the debtor's claim, it is essentially a defense to the debtor's claim against the creditor rather than a mutual obligation, and application of the limitations on setoff in bankruptcy would be inequitable." *In re B & L Oil Co.*, 782 F.2d 155, 157 (10th Cir.1986) (citing *Lee v. Schweiker*, 739 F.2d 870, 875 (3rd Cir.1984)). Accordingly, we rule that the Trustee is not entitled to recover, as a setoff, the $1,069.95 claimed in Count II of his complaint.

## ORDINARY COURSE OF BUSINESS DEFENSE

■ Narragansett also raises the "ordinary course of business" exception as a defense to the Trustee's preference claim in the amount of $26,818.34, based on the payment made by the debtor on December 14, 1987.

11 U.S.C. Section 547(c)(2) provides that:

(c) The trustee may not avoid under this section a transfer—

(2) to the extent that such transfer was—

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(C) made according to ordinary business terms;

---

**3.** Section 553(b)(2) defines insufficiency as an "amount, if any, by which a claim against the debtor exceeds a mutual debt owing to the debtor by the holder of such claim."

The First Circuit has determined that this section is comprised of three distinct elements, and that since the subsections are written in the conjunctive, the creditor is required to establish each one of them. *WJM, Inc. v. Mass. Dpt. of Public Welfare,* 840 F.2d 996 (1st Cir.1988). "[T]he subject transfer must be in payment of a debt that was *incurred* by the debtor in the ordinary course of its affairs with the creditor, the transfer itself must be *made* during the ordinary course of these affairs, and the transfer must be made according to ordinary business terms." *Id.* at 1010–1011 (emphasis in original).

It is not disputed that the debt in question—the bill for electrical service—was incurred by the debtor in the ordinary course of its business with Narragansett.

As to the second element, the parties presented evidence of the debtor's payment history for the year and a half preceding the filing, and that during its last year of operation the debtor paid Narragansett six times. Two payments were for one month periods (although both payments were two months late), three payments were for two month periods, and one check, the payment in question, was for a three month period. (*See,* Defendant's Exhibits A, B, Joint Pre-trial Order, paragraph 22). The record also shows that Narragansett did not prompt or induce the December 14, 1987 payment, but that it was received by regular mail, and was made, as usual, by an uncertified business check. Based on this evidence, we find that it was in the ordinary course of Miner's business to pay its electric bill approximately two months after billing, in two month increments, and that it was in the ordinary course of Narragansett's business practice to accept payments in that manner. The check in question, however, included payment for electrical service provided over a three month period, and was made three months after the initial billing. At trial, in light of the evidence, we raised the question whether a single payment may be viewed as partially preferential and partially nonpreferential, and requested counsel to submit written arguments on that point. Although neither party cited a decision rendered after the amendment of Section 547(c)(2) (eliminating the old 45 day rule), Narragansett did present pre-amendment cases, including one from this district, which hold that a payment may be split into preferential and nonpreferential portions. *See e.g. In re Moran Air Cargo, Inc.,* 30 B.R. 406 (Bankr.D.R.I.1983); *In re Thomas W. Garland, Inc.,* 19 B.R. 920 (Bankr.E.D.Missouri 1982). We see no reason why these pre-amendment authorities are not applicable here. Considering that the payment in question covered three months—August, September and October, 1987, and that it was in the debtor's ordinary course of business to pay Narragansett invoices in two month installments, we hold that the December 14, 1987 payment is nonpreferential for the months of August and September, but is preferential, in the amount of $8,502.27, as to the month of October.

We also conclude that the payment in question was made according to ordinary business terms. Section 547(c)(2)(C). Charles Kelleher, the collection coordinator for Narragansett Electric, testified that approximately one third of Narragansett's customers were in arrears during 1986 and 1987, and that at least 10 percent of its customers paid their bills two months in arrears. This practice (which can only be viewed as an accommodation to the customer), together with the regularity of the service provided, requires us to conclude that the debtor's December payment, for the prior two month period, was made according to ordinary business terms.

Lastly, the Trustee acknowledges that Narragansett continued to supply electrical service to the debtor after the December 14, 1987 payment, which constituted new value, and for which a reduction of $5,041.71 from the preferential portion is in order.

Accordingly, we hold that the Trustee is entitled to recover $3,460.56 from Narragansett, as a voidable preference, pursuant to Section 547[4], and it is so ORDERED.

---

**4.** We arrive at this figure by deducting the $5,041.71 of "new value" from the October 16, 1987 charge of $8,502.27.

Enter Judgment consistent with this opinion.