In re Carolyn MASON, Debtor.

Carolyn MASON, Plaintiff,

v.

BENJAMIN BANNEKER PLAZA, INC.
and NCHP, Defendants.

Bankruptcy No. 86–01904K.
Adv. No. 86–0526S.

United States Bankruptcy Court,
E.D. Pennsylvania.

Feb. 10, 1987.

Michael Donahue, Chester, Pa., for plaintiff-debtor.

Mark F. DiGiovanni, Media, Pa., for defendants.

James J. O'Connell, Philadelphia, Pa., Trustee.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

The present posture of this case brings before us the issue of whether a debtor-former tenant can avoid, as a preferential transfer, a payment made to her former landlord from a bank account in which she deposited her rentals during the pendency of an appeal from a judgment in favor of the landlord. We hold that, since the "transfer" of the payment, for purposes of § 547(b)(4), took place when the funds were actually paid to the landlord, the date of which was within ninety (90) days from the Debtor's bankruptcy filing, she must prevail.

The history of this adversarial proceeding, at least in its early stages, was paralleled with litigation in the main case in reference to a Motion by the Defendant-landlord, BENJAMIN BANNEKER PLAZA (hereafter referred to as "the Defendant"),[1] to obtain relief from the automatic stay imposed by the Debtor's bankruptcy filing in order to evict the Debtor from her premises rented from the Defendant. The Debtor had filed her bankruptcy case, pursuant to Chapter 13 of Title 11, U.S.Code, on April 18, 1986. Five (5) days later, the Defendant filed Motions seeking relief from the automatic stay and expedited disposition thereof which were heard on April 29, 1986, by our predecessor, the Honorable William A. King, Jr. The matter was taken under advisement by Judge King and Briefs were filed by both parties.

During the period when that matter was under advisement by Judge King, this adversarial proceeding was commenced on June 17, 1986. In it, the Debtor sought, alternatively, the following relief: (1) Assumption of her lease with the Defendant, per 11 U.S.C. § 365; or (2) In the event that assumption of the lease was not permitted, recovery of a payment remitted to the Defendant from a bank account of the Debtor on February 27, 1986, as a preferential payment.

On July 22, 1986, Judge King filed an Opinion and Order granting the Defendant's Motion for Relief from the automatic stay. The Debtor filed a timely appeal of this decision to the District Court. On September 4, 1986, the District Court, per the Honorable James T. Giles, entered a temporary stay order preventing the Debtor's eviction while the matter was pending before him. However, on October 7, 1986, Judge Giles filed a Memorandum and Final Order affirming Judge King's Order and vacating the temporary stay Order.

Pursuant to this decision, the Debtor has vacated the premises which she had rented from the Defendant. However, the foresight of her counsel in pleading an alternative prong in this proceeding is rewarded by her retention of a viable cause of action on behalf of the Debtor to recover the rental payment made on February 27, 1986.

On December 2, 1986, the trial of this matter was listed before this Court. The parties' counsel expressed a welcomed desire to prepare a Stipulation of Facts which would constitute the entire record of the proceeding and then submit Briefs in support of their respective positions. Accordingly, a rather brief Stipulation of Facts was filed by the parties on or about December 9, 1986, and Briefs were filed on or about December 16, 1986, and January 15, 1987, respectively, by the parties. In light of this manner of the presentation of this case to the Court, Findings of Fact, per Bankruptcy Rule 7052 and Federal Rule of Civil Procedure 52(a), are unnecessary, and we are therefore preparing our within decision in narrative form.

Nevertheless, at the outset, a recitation of the relevant contents of the Stipulation of Facts not already touched upon *supra* is necessary to an understanding of our result.

On March 6, 1985, apparently while in the course of an appeal to the Delaware

---

1. Also named as Defendant is an entity identified only as "NCHP." As the Stipulation of Facts which constitutes the record makes no reference to this entity, we shall disregard it in this discussion and in framing our Order.

County Court of Common Pleas, in Case No. 84–9587, from an adverse decision in a landlord-tenant proceeding in magisterial court, the Debtor opened a bank account in her name in the Fidelity Bank, Account No. 35–081990–4.[2] During the pendency of her appeal, she continued to deposit approximately her monthly rentals of $283.00 into the account. As of December 18, 1985, when the matter came before the Honorable Frank T. Hazel of the Delaware County Court of Common Pleas bench for trial, a total sum of $3,547.00 had been deposited in the account.

On that date, the Debtor, apparently represented by counsel other than her present counsel, entered into a Settlement Agreement with the Defendant, a written memorialization by Judge Hazel of which is attached to the parties' Stipulation of fact. This Settlement Agreement states that "[a]ll funds escrowed" by the Debtor "are to be transferred to [the Defendant] by January 25, 1986;" that the Debtor "will vacate the premises on or before March 1, 1986;" and that the Debtor would pay additional monthly rentals until she vacated the premises.

Thereafter, pursuant to a motion by the Defendant to enforce the settlement, Judge Hazel entered a further Order of January 21, 1986, directing the Debtor "to comply with the "terms" of said agreement no later than January 28, 1986," and to pay the Defendant an additional sum of $260.00 in attorney's fees and costs on or before February 4, 1986.

The Debtor, however, apparently neither vacated her premises, nor did she pay any sums to the Defendant until February 27, 1986, when she paid it a total sum of $3,702.95, $283.00 of which constituted her February, 1986, rent. Having filed her bankruptcy case on April 18, 1986, clearly within ninety (90) days from the payment date, the Debtor now claims that she can recover all but the February, 1986, rent, or

the net sum of $3,419.95, from the Defendant as a preferential transfer, per 11 U.S.C. §§ 547(b), 522(h), and 522(g)(1).

The threshold pertinent statutory provision, 11 U.S.C. § 547(b), states as follows:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider;

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

The ability of the Debtor to step into the shoes of the trustee to assert the power set forth in § 547 is invoked pursuant to 11 U.S.C. § 522(g)(1) and (h), which provides as follows:

(g) Notwithstanding sections 550 and 551 of this title, the debtor may exempt under subsection (b) of this section property that the trustee recovers under section 510(c)(2), 542, 543, 550, 551, or 553 of this title, to the extent that the debtor could have exempted such property un-

---

**2.** Because the Stipulation of Facts merely indicates that this account was opened by the Debtor, that it was a "Regular" account, per the bank statement attached to the Stipulation, and that the "source" of the payment was this account, we cannot make a finding that this was an "escrow" account established pursuant to some court order or Court Rule, as the Defendant urges us to do.

der subsection (b) of this section if such property had not been transferred, if—

> (1)(A) such transfer was not a voluntary transfer of such property by the debtor; and
>
> (B) the debtor did not conceal such property; . . .
>
> (h) The debtor may avoid a transfer of property of the debtor or recover a setoff to the extent that the debtor could have exempted such property under subsection (g)(1) of this section if the trustee had avoided such transfer, if—
>
> (1) such transfer is avoidable by the trustee under section 544, 545, 547, 548, 549, or 724(a) of this title or recoverable by the trustee under section 553 of this title; and
>
> (2) the trustee does not attempt to avoid such transfer.

The Defendant presents three (3) arguments in its defense:

1.  Relief is precluded, in light of Judge Giles' decision of October 7, 1986, on the ground of res judicata.

2.  The Debtor voluntarily transferred the funds to the Defendant, and hence is unable to meet the criteria of § 522(g)(1).

3.  The purported transfer does not fall within § 547(b) for two (2) reasons:

(a) There was actually no transfer on February 27, 1986, because the Debtor did not have an interest in the funds in the account after she deposited them;

(b) If there was a transfer, it took place no later than December 18, 1985, when Judge Hazel ordered the Debtor to pay these funds to the Defendant, not on February 27, 1986. We shall discuss each in turn and reject each one.

■ The issue of res judicata arises in light of the following passage in Judge Giles' Memorandum and Final Order of October 7, 1986:

> 7. Inasmuch as the December 18, 1985, settlement agreement occurred more than ninety (90) days prior to the date April 29 [sic], 1986, that Ms. Mason filed her bankruptcy petition, there was

no preferential transfer that could be set aside under section 522(h) and section 547 of the Bankruptcy Act [sic]. 11 U.S.C. §§ 522(h), 547.

The Defendant contends that this finding that there was no "preferential transfer" because any "transfer" occurred outside of the 90–day period established in 11 U.S.C. § 547(b)(4)(A), is preclusive of a contrary finding in this action.

In order for res judicata to apply,

> There must be a showing that "between the previous action and the present action there [is] an identity in the thing sued on, identity of the cause of action, identity of the persons and parties to the action, and identity of the quality or capacity of the parties suing or sued." *Davis v. United States Steel Supply, etc.*, 688 F.2d 166, 170–71 (3d Cir.1982) (en banc), *cert. denied*, 460 U.S. 1014 [103 S.Ct. 1256, 75 L.Ed.2d 484] (1983) (quoting *Duquesne Slag Products Co. v. Lench*, 490 Pa. 102, 105, 415 A.2d 53, 55 (1980).

*See also, e.g., Mattas v. Supreme Court of Pennsylvania*, 576 F.Supp. 1178, 1184 (E.D.Pa.1983); and *In re Peterman*, 5 B.R. 687, 689 (Bankr.E.D.Pa.1980) (per GOLDHABER, CH. J.).

We conclude that, while there is an identity of parties in this action and the earlier action in District Court, the requisite "identity in the thing sued on" and "identity of the cause of action" are lacking here. The District Court action, arising in the context of the Defendant's Motion for relief from the automatic stay, could necessarily only be concerned with the issue of the Debtor's right to continued possession of the premises which she had rented from the Defendant. Furthermore, it is clear from the examination of the Debtor's Statement of Issues and Brief in connection with the appeal that the issue of a preferential transfer was raised only in the context of an attempt to avoid the transfer of the Debtor's leasehold interest in the premises to the Defendant as preferential. No effort was made in that action to address the consequences of the Debtor's *monetary*

transfer to the Defendant, which is of course the only matter in issue in this action.

■ However, we believe that the Defendant's raising of a res judicata defense may be broadly considered as an invocation of the closely-related doctrine of collateral estoppel. Hence, we must consider whether Judge Giles' decision precludes the Debtor from litigating, in this action, the *issue* of whether the transfer from the Debtor to the Defendant occurred within the requisite 90–day period.

Four (4) conditions must be met before collateral estoppel may be successfully invoked:

(1) the issue decided in the prior adjudication [must be] identical with the one presented in the later action,

(2) there [must have been] a final judgment on the merits,

(3) the party against whom the plea is asserted [must have been] a party or in privy with a party to the prior adjudication, and

(4) the party against whom it is asserted [must have had] a full and fair opportunity to litigate the issue in question in a prior action.

*Ranger Ins. Co. v. General Accident Fire & Life Assurance Corp., Ltd.,* 800 F.2d 329, 330–31 (3d Cir.1986).

*See also, e.g., In re Holmes,* 52 B.R. 35, 36 (Bankr.W.D.Pa.1985); *In re Marketing Resources Int'l Corp.,* 43 B.R. 71, 73 n. 4 (Bankr.E.D.Pa.1984) (per GOLDHABER, CH. J.); and *In re Bohrer,* 19 B.R. 958, 959 (Bankr.E.D.Pa.1982) (per KING, J.). We believe that the issue resolved in the action decided by Judge Giles was, again, the date of the termination transfer of the Debtor's tenancy, not the date of the transfer of her rental payments. We do not believe these two (2) issues to be, in this context, "identical."

By way of further explanation, we hold that Judge Hazel's Order has different consequences as to the Debtor's tenancy as opposed to her obligation to make a payment. As analyzed by Judge King and Judge Giles in the prior decision in this case, Judge Hazel's Order of December 18, 1985, was found to have terminated the Debtor's tenancy as of that date. Judge King and Judge Giles then invoked the principle that a tenancy interest which has been terminated prior to the bankruptcy filing cannot be revived by the bankruptcy filing. *See e.g., In re Best Film & Video Corp.,* 46 B.R. 861, 869–70 (Bankr.E.D.N.Y. 1985); *In re Heaven Sent, Ltd.,* 37 B.R. 597, 598 (Bankr.E.D.Pa.1984) (per GOLDHABER, CH. J.); and *In re Anne Cara Oil Co.,* 32 B.R. 643, 647–48 (Bankr.D.Mass. 1983).

■ While we must confess that we question this result on the facts here, we are bound by this decision. However, with respect to the payment of the account funds, the Settlement Agreement of December 18, 1985, stated that this transfer of funds was not to take place until January 25, 1986. In his Order of January 21, 1986, Judge Hazel further extended the payment deadline to January 28, 1986. We do not believe that all of the Debtor's interest in the funds could be terminated prior to at least the due date of payment. It does not seem logical to us that the entry of a judgment, or even the entry of a court order requiring payment of a debt as of a date certain, can constitute a transfer of all interests of the Debtor in funds which could be utilized to comply with the judgment or court directive of payment. We believe that only the payment itself constitutes a transfer.

We hence conclude that the Debtor's cause of action here has not been previously decided or even addressed by either Judge King of this Court or by Judge Giles in their respective previous decisions. Therefore, we must decide this case on its merits.

■ The second issue is whether the Debtor's transfer of funds to the Defendant was "voluntary" and hence within the scope of 11 U.S.C. § 522(g)(1).

We recently had occasion to address the application of 11 U.S.C. §§ 522(g)(1) and (h)

to a proceeding by debtor to recover preferential transfers per 11 U.S.C. § 547 in *In re Johnson-Allen, Commonwealth Dep't. of Public Welfare v. Johnson-Allen*, 69 B.R. 461 (consolidated with *In re Steffler, Commonwealth Dep't of Public Welfare v. Steffler*), at 470–71 (Bankr.E.D.Pa., 1987). There, we held that payments, though made voluntarily by the Debtors, but only in the face of the threat of institution of legal actions to compel collection of the sums paid, were not "voluntary transfers" per 11 U.S.C. § 522(g)(1). In that decision, we cited with approval the decisions in *In re Seidel*, 27 B.R. 347 (Bankr.E.D.Pa.1983) (per TWARDOWSKI, CH. J.) (payment voluntarily made by Debtor who was ignorant of legal consequences of action held not "voluntary transfer"); *In re Taylor*, 8 B.R. 578 (Bankr.E.D.Pa.1981) (per GOLDHABER, CH. J.) (payment made voluntarily by Debtor, but only in the face of threats of foreclosure by collection agency, held not "voluntary transfer"); and *In re Reaves*, 8 B.R. 177 (Bankr.D.S.D.1981) (payment made voluntarily by Debtor, but only after pressure from bank officer, held not a "voluntary transfer").

Here, the Debtor paid over the sums in question after not only the Court Order of December 18, 1985, but also a subsequent order of January 21, 1986, reiterating that Order in the face of the Debtor's apparent attempts to repudiate the settlement agreement. Even at that, the Debtor made the payment in issue almost a month after the deadline set forth in the second Order. It can hardly be said that the issue of whether the payment here was a "voluntary transfer" was even as close as it was in any of the foregoing cases. Therefore, we conclude that the Debtor may, per §§ 522(g)(1) and (h), initiate this proceeding to avoid the allegedly preferential transfer in issue.

The final issue is whether the Debtor meets all of the criteria of 11 U.S.C.

§ 547(b). The only element which is seriously in issue is the requirement of § 547(b)(4) that there must be a transfer of the Debtor's interest in property on or within ninety (90) days before the filing of the bankruptcy petition. The Defendant questions, first, whether the Debtor, as a depositor into what it characterizes as an escrow account, had any interest in the sums deposited after they were placed into the account. Secondly, drawing at least by analogy upon the result reached by this Court and Judge Giles relating to the date of termination of the Debtor's tenancy,[3] the Defendant argues that the transfer occurred on December 18, 1985, the date that she was found to have agreed to a settlement before Judge Hazel, which was a date beyond the 90–day period.

The issue of whether deposits made into what is, without dispute, an escrow account, are property of a Debtor's estate is, we believe ultimately a question of the interpretation of 11 U.S.C. § 541, which describes what is to be considered as "property of the estate" of a debtor. We note that the United States Supreme Court discussed the issue of what constitutes "property of the estate" in *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). In deciding that tangible personal property of the debtor, seized prior to the bankruptcy filing by the Federal Internal Revenue Service (IRS) and which the IRS was preparing to dispose of at the tax sale, was "property of the estate," the Court stated as follows:

§ 541(a) provides that the "estate is comprised of all the following property wherever located: ... all legal or equitable interests of the debtor in property as of the commencement of the case" 11 U.S.C. § 541d(a)(1) [11 U.S.C. § 541(a)(1) ]. The House and Senate Reports on the Bankruptcy Code indicate that § 541(a)(1)'s scope is broad. Most important, in the context of this case,

---

**3.** In our ruling at pages 880–81 *supra*, we hold that the prior decision by Judge King of this Court, and Judge Giles on appeal there-from, do not bar the Plaintiff's cause of action under the doctrines of either res judicata or collateral estoppel.

§ 541(a)(1) is intended to include in the estate any property made available to the estate by other provisions of the Bankruptcy Code. See H.R.Rep. No. 95–595, p. 367 (1977). Several of these provisions bring into the estate property in which the debtor did not have a possessory interest at the time and the bankruptcy proceedings commenced. *Id.* at 204–05, 103 S.Ct. at 2313 (footnotes omitted).

The reasoning of *Whiting Pools* has been applied to other circumstances where a debtor did not have possession, at the time of filing bankruptcy, of the property which he or she sought to have turned over to him or her. Many cases involve, for example, motor vehicles repossessed prior to bankruptcy filings. *See, e.g., In re Atti-nello,* 38 B.R. 609 (Bankr.E.D.Pa.1984) (per TWARDOWSKI, CH. J.); *In re Madden,* 35 B.R. 821 (Bankr.E.D.Va.1983); and *In re Willis,* 34 B.R. 451 (Bankr.M.D.N.C. 1983).

Two (2) Circuit Court of Appeals have reached what appear to be conflicting results in determining when funds paid out of an escrow account are no longer in the realm of "property of the estate" of the Debtor. In *In re Newcomb,* 744 F.2d 621 (8th Cir.1984), the court, referring at length to the law of the state of Missouri, which applied thereto, held that a fund held in escrow ceased to be property of the debtor when it was turned over to the escrow agent. However, in *In re Mission-ary Baptist Foundation of America, Inc.,* 792 F.2d 502 (5th Cir.1986), another Court of Appeals held, referring to Texas law, that escrow funds remained property of the debtor's estate, and presumably would so remain until distributed. Varying results have been reached in other known reported decisions. Escrow funds were held to be property of the respective debtors' estates, consistently with *Missionary Baptist,* in *In re Haynes,* 35 B.R. 32 (Bankr.M.D.Tenn. 1983); *In re Turner,* 29 B.R. 628 (Bankr.D. Me.1983); and *In re Heckler Land Dev. Corp.,* 15 B.R. 856 (Bankr.E.D.Pa.1981)

(per KING, J.). However, the Courts held to the contrary in *In re Coco,* 67 B.R. 365 (Bankr.S.D.N.Y.1986); and *In re Creative Data Forms,* 41 B.R. 334 (Bankr.E.D.Pa. 1984) (per KING, J.), *aff'd,* C.A. No. 84–6161 (E.D.Pa., unreported Opinion filed July 29, 1985) (per NEWCOMER, J.).

Although these matters never resulted in written opinions, the Court is aware that Chief Judge Twardowski of this Court has repeatedly held that funds held by court clerks in escrow during the pendency of landlord tenant appeals are "property of the estate" of tenant-debtors, and hence may be recovered by the tenant-debtors in turnover proceedings under 11 U.S.C. § 542, and one of these decisions was affirmed by the District Court in *In re Sny-der,* Bankr. No. 83–04084T (Bankr.E.D.Pa., Order filed March 8, 1985), *aff'd,* C.A. No. 85–2605 (Order filed Nov. 27, 1985) (per TROUTMAN, J.). *See also In re Savaki,* Bankr. No. 85–02561T (Bankr.E.D.Pa., Order filed March 4, 1986).

In comparing the results of these cases, we are inclined to conclude, with Chief Judge Twardowski, that payments by a tenant appealing from an adverse landlord-tenant judgment into a court escrow account are property of the tenant-debtor's estate. However, we must observe that, since the funds in issue here were at all times held by the Debtor herself, in an account to which she alone rather than some intermediary escrow agent had access,[4] there is little doubt that the funds in issue, prior to February 27, 1986, were not even held "in escrow." We recognize that Judge Hazel used this term in his orders, but the singular characteristic of an escrow agreement is that it relates to "property delivered by the grantor, promisor or obligor into the hands of a third person, ..." BLACK'S LAW DICTIONARY 489 (5th ed. 1979). See *In re ABW, Inc.,* 29 B.R. 88, 89–90 (Bankr.D.Nev.1983) (depositor must not only relinquish control of funds but give party holding funds instructions and

**4.** *See* page 879 n. 2 *supra.*

have party agree to status as escrow agent to create an "escrow"). We therefore hold that the funds here were not "held in escrow" and that we must consult the Code to determine the time when the "transfer" here was "made" for purposes of 11 U.S.C. § 547(b)(4).

As Collier points out, 4 COLLIER ON BANKRUPTCY, ¶ 547.44, at 547–138 (15th ed. 1986), the determination of when a transfer is "made" can best be analyzed by reference to 11 U.S.C. § 547(e), which provides as follows:

(e)(1) For the purposes of this section—

(A) a transfer of real property other than fixtures, but including the interest of a seller or purchaser under a contract for the sale of real property, is perfected when a bona fide purchaser of such property from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest that is superior to the interest of the transferee; and

(B) a transfer of a fixture or property other than real property is perfected when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee.

(2) For the purposes of this section, except as provided in paragraph (3) of this subsection, a transfer is made—

(A) at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 10 days after, such time;

(B) at the time such transfer is perfected, if such transfer is perfected after such 10 days; or

(C) immediately before the date of the filing of the petition, if such transfer is not perfected at the later of—

(i) the commencement of the case; or

(ii) 10 days after such transfer takes effect between the transferor and the transferee.

(3) For the purposes of this section, a transfer is not made until the debtor has acquired rights in the property transferred.

This section, as Collier indicates, provides that a transfer "shall be regarded as made only when perfected as against other parties— ..." 4 COLLIER, *supra, id.* Further, it is said that "[c]ertain types of transfers" such as "a cash payment by a debtor to his creditor, ... are deemed to have been made at the time when they were [sic] actually transpired, ..." *Id.*

One area of dispute in many prior cases has been whether, for purposes of § 547(b)(4), it is determined that a payment by check is deemed to be "made" when the check is delivered or whether the check is honored. This Court, with the majority, has held that a transfer should not be deemed made until the debtor's payment check is honored. *See In re American Int'l Airways, Inc., Begier v. Krain Outdoor Advertising, Inc.,* 68 B.R. 326, 335 (Bankr.E.D.Pa., 1986); and *In re Ardmore Sales Co., Inc.,* 22 B.R. 911, 913 (Bankr.E. D.Pa.1982) (per GOLDHABER, CH. J.). *See also, e.g., In re Georgia Steel, Inc.,* 38 B.R. 829, 832–33 (Bankr.M.D.Ga.1984); and *In re Skinner Lumber Co.,* 27 B.R. 669 (Bankr.D.S.C.1982). *But see In re Kenitra, Inc.,* 797 F.2d 790 (9th Cir.1986) (date of transfer is date that check is delivered). *See* Comment, *Timing of Payments by Check Under § 547 of the Bankruptcy Code,* 7 CARDOZO L.REV. 887, 895–903, 910 (1986).

■ The foregoing authorities establish, relevant to the instant case, that a transfer, for purposes of § 547(b), can never be said to occur *earlier* than the physical transfer of funds by the debtor to the creditor, and may in fact be held to occur considerably thereafter.

■ Hence, in light of consideration of cases interpreting § 547(e), we do not see how it could be held that the transfer of funds from the Debtor to the Defendant, for purposes of § 547(b), could be said to have occurred on December 18, 1985. As we indicated at page 881 *supra,* it is not logical to consider a transfer of monies due

to be made until funds actually pass hands, irrespective of the date of a judgment or an order requiring the funds to be paid over as of a certain subsequent date. Here, as we indicated below, Judge Hazel's Orders of December 18, 1985, and January 21, 1986, stated that the funds were "to be transferred" by January 25, 1986, and January 28, 1986, respectively, both of which are dates within ninety (90) days of the Debtor's bankruptcy filing on April 18, 1986. In any event, we conclude that the transfer, for purposes of § 547(b)(4), was "made" on February 27, 1986, the date of the actual remittance of the funds. We therefore agree with the Debtor in her assertion that $3,419.95 of the funds transferred, i.e., all but the portion representing the February rental payment, were payments for an antecedent debt and hence are avoidable by her.

Although it seems likely to us that all of the funds will be property which the Debtor could exempt, in an abundance of caution, we shall direct the Defendant to pay the sums in issue over to the Trustee, JAMES J. O'CONNELL, ESQUIRE, with direction to the Trustee to remit the sums in turn to the Debtor if and when he is convinced that these funds actually are exempt property. An appropriate Order shall be issued.