**In re Frederic A. SHAPIRO and Rosalie B. Shapiro, Debtors.**

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS, Plaintiff,**

**v.**

**CUSHMAN AND WAKEFIELD OF PENNA., INC., Frank–Lynn Realty, and Maytor H. McKinley, Defendants.**

Bankruptcy No. 89–13772S.

Adv. No. 90–0026.

United States Bankruptcy Court,
E.D. Pennsylvania.

March 8, 1991.

Mark S. Kenney, Klehr, Harrison, Harvey, Branzburg & Ellers, Philadelphia, Pa., for plaintiff.

Richard B. Miller, Spector, Gadon & Rosen, P.C., Philadelphia, Pa., for defendants.

H. Marvin Mercer, III, Krusen, Evans & Byrne, Philadelphia, Pa., for debtors.

James J. O'Connell, Asst. U.S. Trustee, Philadelphia, Pa.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

### A. INTRODUCTION

The issue presented by this proceeding is the disposition of an escrow deposit made by a Debtor-buyer of real estate under an agreement of sale and an escrow agreement allowing delivery of the fund only upon agreement by the parties or court authorization in light of (1) the Debtor's pre-petition default of the agreement; and (2) his post-petition consent to the release of the fund to the Sellers. We hold that, in these circumstances, the fund was "property of the estate" of the Debtor at the time of the filing and that therefore the Sellers cannot summarily take it. However, we further hold that the Sellers retain a special interest in the fund, which, in light of the absence of an offer of adequate protection by any party on behalf of the Debtors' estate, precludes the turnover of the fund to the estate. We also conclude that (1) no transfer of the fund took place in the 90-day period prior to bankruptcy, which precludes the use of 11 U.S.C. § 547 to acquire the fund for the estate; and (2) there is insufficient evidence of lack of "reasonably equivalent value" in exchange for the Debtor's deposit of the fund to allow the invocation of 11 U.S.C. § 548. We are therefore obliged to deny the requested relief of turnover of the fund to the estate and must leave the fund where it is.

### B. PROCEDURAL HISTORY

The underlying voluntary joint Chapter 11 bankruptcy case of FREDERIC A. SHAPIRO ("the Debtor") and his wife, ROSALIE B. SHAPIRO (collectively the Debtor and his wife are referred to as "the Debtors"), had an unusual beginning. At its outset, on October 12, 1989, this court, the Debtors and the United States Attorney requested that this court seal and impound the file of this case. We denied this request, believing that such an action was inconsistent with the basic tenet of the open disclosure required of all debtors in a bankruptcy proceeding. As a result, the Debtors ultimately, on January 31, 1990, moved the district court to withdraw the reference of this entire case and have it proceed there under seal. This motion was granted by the Honorable Joseph L. McGlynn of the district court on February 12, 1990, and the case was therefore administered in the district court. On July 10, 1990, Judge McGlynn entered an Order "unsealing" and "impounding" the case. On October 25, 1990, he entered a further Order referring this case back to this court.

In the phase of the case in this court prior to its removal, on December 6, 1989, we were confronted with two significant motions. One, a motion by Liberty Savings Bank for relief from the automatic stay to foreclose on certain realty owned by the Debtors in Ocean City, N.J., was heard that day and decided in an Opinion of January 4, 1990, published at 109 B.R. 127. The other was a motion by one of the defendants in the instant proceeding, CUSHMAN AND WAKEFIELD OF PENNA., INC. ("C & W"), seeking relief from the automatic stay to pursue a pre-petition state-court inter-

pleader action to determine the rights of the Debtor on one hand, and those of the other defendants in the proceeding, FRANK–LYNN REALTY and MAYTOR H. McKINLEY (collectively referred to as "the Sellers"), on the other hand, to the escrow fund of $40,000 in dispute.

As a result of a colloquy including counsel for C & W and the Plaintiff in this proceeding, the OFFICIAL COMMITTEE OF UNSECURED CREDITORS ("the Plaintiff"), on December 6, 1989, we entered an Order on December 7, 1989, providing, *inter alia,* as follows:

> 1. Any interested creditor or Creditors' Committee is authorized to file and serve an appropriate motion or proceeding seeking turnover to the Debtors' estate of the funds which are the subject of the Cushman Motion [to lift the stay] on or before January 16, 1990. However, if no such motion or proceeding is filed, relief from the stay shall be GRANTED to Cushman upon presentation of an Order and Praecipe by Cushman.
>
> . . . . .
>
> 3. The original copy of any materials submitted pursuant to paragraph one ... *supra* shall be filed with the Clerk of this Court and copies sent to opposing counsel and delivered to the Court on or before 4:30 P.M. on the ... date ... indicated....

On January 16, 1990, the Plaintiff filed the instant proceeding, seeking, alternatively, the turnover of the escrow fund to the Debtors' estate or the avoidance of the transfer of the fund as a preference, pursuant to 11 U.S.C. § 547(b), or as a fraudulent conveyance, pursuant to 11 U.S.C. § 548(a)(2)(A). However, the Plaintiff did not serve copies upon C & W or the court on January 16, 1990, as per the directive in the December 7, 1989, Order. Further, the plaintiff erroneously designated the main case number on its filing as Bankr. No. 89–137*2*2S (instead of Bankr. No. 89–137*7*2S), which resulted in the absence of any reference to this proceeding on the main case docket.

Therefore, on January 18, 1990, C & W was unaware of a filing by the Plaintiff or any other party and presented a praecipe to this court requesting relief from the stay. Likewise unaware of this filing, we entered the proposed Order on January 23, 1990, granting this relief.

On January 31, 1990, the Plaintiff filed a motion seeking to vacate the Order of January 23, 1990. This motion was listed for a hearing before us on March 14, 1990. However, Judge McGlynn's Order of February 12, 1990, withdrawing the reference of this case took that matter temporarily out of our hands.

On February 16, 1990, the Defendants filed a pleading including a Motion to Dismiss this proceeding for failing to state a cause of action and an Answer to the Complaint. The matter next re-surfaced on May 31, 1990, when Judge McGlynn conducted a consolidated hearing on both the Plaintiff's motion and the instant adversary proceeding. Brief testimony was adduced at that time, but no decisions were rendered.

On December 18, 1990, shortly after receipt of the Order of Judge McGlynn referring the case back to us, we conducted a conference of all interested parties to ascertain the status of outstanding matters related to this case. At that conference, the occurrence of the trial and status of this proceeding were related to us. Counsel for all parties agreed that we could decide the matters on the basis of a transcript of the hearing before Judge McGlynn on May 31, 1990,[1] briefs to be submitted by January 18, 1991 (the Plaintiff), and January 28, 1991 (the Defendants). We shall proceed to do so.

## C. FACTUAL HISTORY

The transaction underlying this dispute was a contract for the sale of real estate at 1719 Rittenhouse Street, Philadelphia, Pennsylvania ("the Property"), executed on or about January 18, 1989. Pursuant to this contract, the Debtor was to purchase

---

**1.** Had they not so agreed, it appears that we would have been obliged to retry this proceed-

ing. *See* 7 J. MOORE FEDERAL PRACTICE, ¶ 63.05, at 63–9 (2d ed. 1990).

the Property from the Sellers for $840,000 as part of a tax-free exchange. The parties executed an Agreement of Sale amended by a Rider dated February 16, 1989 ("the A/S"), which increased the purchase price from $840,000 to $900,000.

Pursuant to the A/S, the Debtor placed a deposit of $40,000 in escrow with the real estate agent involved in the transaction, C & W. The Debtor, the Sellers, and C & W executed an Escrow Agreement ("the EA") on March 6, 1989. The EA provides, in pertinent part, as follows:

> If there is any dispute as to whether Escrow Agent [C & W] is obligated to deliver the Escrow Fund, or as to whom it is to be delivered, Escrow Agent will not be obligated to make any delivery of the Escrow Fund, but in such event may hold the Escrow Fund until receipt by the Escrow Agent of an authorization in writing, signed by all the persons having interest in such dispute, directing the disposition of the Escrow Fund, or in the absence of such authorization, Escrow Agent may hold the Escrow Fund until the final determination of the rights of the parties in an appropriate proceeding. If such written authorization is not given or proceedings for such determination are not begun and diligently continued, Escrow Agent may at its option bring an appropriate action or proceeding for leave to deposit the Escrow Fund in court, pending such determination provided, however, that should Escrow Agent elect to do so it will be reimbursed by Seller and Purchaser for all expenses (including attorneys fees) incurred by Escrow Agent.

Pursuant to the A/S, the closing was to take place on May 22, 1989. However, the Debtor informed the Sellers, on May 19, 1989, that he would not be completing the settlement, nor did he wish to extend the closing date. In fact, just before May 19, 1989, the Debtor surrendered to the United States Attorney, confessing to a fraudulent scheme whereby he bought parcels of real estate by the use of funds obtained through fraudulent financial statements.

On May 22, 1989, the Sellers wrote to C & W, demanding delivery of the escrowed fund because the Debtor had breached the agreement of sale. On the same day, the Debtor wrote to C & W advising that the escrowed fund "should not be released until you hear further from [me]."

C & W did not release the fund. Instead, on August 7, 1989, it instituted an interpleader action in the Court of Common Pleas of Philadelphia County, August Term, 1989, No. 279 ("the CP Action"), for guidance as to the disposition of the fund. Before any determination of rights had been made in the CP Action and before the fund was removed from C & W's account, the Debtors filed the instant bankruptcy case.

On December 4, 1989, just before the hearing of December 6, 1989, on C & W's motion for relief from the stay, bankruptcy counsel for the Debtors wrote a letter to counsel for the Sellers relinquishing all rights in the escrow fund to the Sellers. However, apparently because of the pending litigation, there has been no disposition of the fund, and it remains in C & W's hands.

At the hearing of May 31, 1990, before Judge McGlynn, the parties stipulated that the Debtor was insolvent "at the time of the entire transaction." Transcript of Hearing of Motions, at 15. The Sellers' principal, Defendant McKinley, testified that he had turned down an offer to sell the Property to a tenant-law firm for $850,000 in January, 1989, in light of the Debtor's offer. However, because of a softening in the Philadelphia real estate market subsequent to May 22, 1989, the Property has never been sold. McKinley therefore contended that he had suffered a significant loss of the benefit of his bargain as a consequence of the Debtor's breach of the A/S. He also testified that he had suffered out of pocket losses for expenditures in legal fees relative to this transaction of between $12,000 and $13,000.

Also testifying was Allen H. Wallen, Esquire, an attorney with the firm representing the Sellers, who verified his fee as $12,500. He also stated that, in his consid-

erable experience in real estate sales transactions, the amount of the escrow in the instant transaction of $40,000 was modest (4.4 percent) relative to the sale price of $900,000. The latter testimony was supported by the testimony of Roger T. McManimon, a C & W agent.

## D. DISCUSSION

### 1. This Court Has Jurisdiction To Hear And Determine This Proceeding.

The Plaintiff alleges, in his complaint, that this matter is a core proceeding, pursuant to 28 U.S.C. § 157(b)(2)(E) and (b)(2)(F). The Defendants did not admit or deny this averment, but did expressly agree, at the status conference on December 18, 1990, that this court could decide the matter on the basis of the record made before Judge McGlynn.

The parties' above-noted pleadings and recitations provide the requisite consent that we hear and determine this proceeding, even if it is non-core. *See, e.g., In re St. Mary Hospital,* 117 B.R. 125, 131 (Bankr.E.D.Pa.1990). Furthermore, since the proceeding seeks to recover specific funds which are allegedly property of the estate, the invocation of 28 U.S.C. § 157(b)(2)(E) is appropriate. *See, e.g., In re 222 Liberty Associates,* 110 B.R. 196, 199 (Bankr.E.D.Pa.1990); and *In re TM Carlton House Partners, Ltd.,* 93 B.R. 859, 872 (Bankr.E.D.Pa.1988). The allegations of a preference and a fraudulent conveyance further implicate 28 U.S.C. § 157(b)(2)(F) and (b)(2)(H), respectively.

We will therefore proceed to determine this proceeding.

### 2. The Order Granting C & W Relief From The Automatic Stay Must Be Vacated.

█ It is disturbing to note that the Plaintiff, by (1) its failure to comply with that aspect of our Order of December 7, 1989, requiring it to *serve* any pleading filed in reference to the escrow funds; (2) its delay until the last day permitted to make its filing; and (3) its error in affixing the correct main bankruptcy case number to its Complaint, has inconvenienced both the Defendants and the court by initially prompting the reasonable conclusion that it did not intend to oppose C & W's motion for relief.

However, the fact remains that this pleading was timely *filed* within the parameters of our Order of December 7, 1989. Refusing to grant the Plaintiff relief from our Order of January 23, 1990, would be comparable to sustaining the entry of a default judgment despite the filing of a responsive pleading because the defendant failed to properly serve the responsive pleading. To do so would run counter to the "underlying principles" which we found, in *In re Miller,* 90 B.R. 762, 765 (Bankr.E.D.Pa.1988), emerged from

the decisions of the Third Circuit Court of Appeals considering motions seeking relief from default judgments: "As a general matter, this court does not favor defaults and doubts should be resolved in favor of setting aside the default and reaching the merits." *Zawadski DeBueno v. Bueno Castro,* 822 F.2d 416, 420 (3d Cir.1987). *See also Gross v. Stereo Component Systems, Inc.,* 700 F.2d 120, 122 (3d Cir.1983); *Feliciano v. Reliant Tooling Company, Ltd.,* 691 F.2d 653, 656 (3d Cir.1982); *Farnese v. Bagnasco,* 687 F.2d 761, 764 (3d Cir.1982); *Medunic v. Lederer,* 533 F.2d 891, 893–94 (3d Cir. 1976); and *Tozer v. Charles A. Krause Milling Co.,* 189 F.2d 242, 245–46 (3d Cir.1951).

Furthermore, a review of the factors set forth in, *e.g., Poulis v. State Farm Fire & Casualty Co.,* 747 F.2d 863, 868 (3d Cir. 1984), suggests that the punishment of perpetuation of our Order of January 23, 1990, does not fit the "crime" of the single series of excusable errors made by the Plaintiff. Had we known of the filing of the instant adversary complaint on January 16, 1990, irrespective of the shortcomings by the Plaintiff in its service, we would never have proceeded to enter the Order of January 23, 1990, in the first place. Therefore, it seems illogical not to vacate it in light of what we now know.

We recognize that the analogy of the entry of the Order of January 23, 1990, to the entry of a default judgment or a dismissal of a claim is not perfect. The Order of January 23, 1990, merely relegated the dispute over the right to the escrow fund to a different forum rather than its constituting the entry of a final decision as to the parties' rights to the escrow fund. However, it is not clear that the Plaintiff would have had standing to appear in the state-court forum to claim the interest of the estate in the fund. Hence, this proceeding in this forum may constitute the Plaintiff's only real opportunity to litigate the issues in dispute.

Furthermore, it is not clear that the final decision in the CP Action would have conclusively determined the Sellers' rights of the fund vis-a-vis the Debtors' estate. It would merely have determined what, under state law, C & W should do with the fund. It would not have determined the parties' relative rights to the fund under the Bankruptcy Code. Thus, it is not clear that the final determination in the CP Action would have decided the issues raised in this proceeding. Hence, a potential existed that the outcome of the CP Action would not be decisive as to the disposition of the Fund and that a duplication of efforts of the courts might be required if, at this juncture, the January 23, 1990, Order were accorded full effect.

The Defendants apparently recognize this, because, despite the continued vitality of our Order of January 23, 1990, granting C & W's motion for relief to this date, they have not pressed forward with the CP Action. The instant proceeding, as we have already found, is directed toward the core bankruptcy effort of collecting assets of the estate in the bankruptcy forum. It is not only desirable, but also an underlying principle of the Bankruptcy Code, to have this one forum determine all issues regarding property of the estate.

For these reasons, we will grant the Plaintiff's request that we vacate our Order of January 23, 1990.

### 3. The Debtor's Rights In The Instant Escrow Fund Are "Property Of The Debtors' Estate."

■ Section 541 of the Bankruptcy Code describes generally the composition of the "property of the estate" of a debtor. *See, e.g., In re Mason,* 69 B.R. 876, 882 (Bankr. E.D.Pa.1987). Property of the estate includes "all legal and equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).

The United States Supreme Court addressed the issue of the breadth of the scope of "property of the estate" in *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). The Court determined that a debtor's property, although seized by the federal Internal Revenue Service ("the IRS") *prior* to the bankruptcy filing, was "property of the estate" of the debtor. The Court noted that the House and Senate Reports on the Bankruptcy Code state that the scope of § 541(a)(1) is broad, and that it is intended to include in the estate any property made available to the estate by other provisions of the Bankruptcy Code. *Id.* at 204–05 n. 8, 103 S.Ct. at 2313–14 n. 8. *See also, e.g., In re Trinsey,* 121 B.R. 462, 466–68 (Bankr. E.D.Pa.1990); *In re CS Associates,* 121 B.R. 942, 960 (Bankr.E.D.Pa.1990); *In re Temp–Way Corp.,* 80 B.R. 699, 702 (Bankr. E.D.Pa.1987); and *Mason, supra,* 69 B.R. at 882–84.

■ This court has considered several cases in which we were obliged to address the issue of whether certain funds deposited into escrow were "property of the estate" of a debtor. *E.g., In re Summit Airlines,* 94 B.R. 367, 370–72 (Bankr.E.D. Pa.1988), *aff'd,* 102 B.R. 32 (E.D.Pa.1989); *Carlton House, supra,* 93 B.R. at 866–67; and *Mason, supra,* 69 B.R. at 882–83. We have noted, in these cases, that a significant factor is whether the debtor was the depositor of the escrowed fund, because, if the debtor is the depositor, legal title to the fund remains in the debtor until delivery of the fund is effected by the escrow agent. *See Summit Airlines,* 94 B.R. at 370–71; *Carlton House,* 93 B.R. at 866; and *Paul*

*v. Kennedy*, 376 Pa. 312, 315, 102 A.2d 158, 159 (1954).

The fund in issue in the instant matter remains, to this day, in the hands of the escrow agent. It was deposited by the Debtor. Therefore, legal title to the fund remains in the Debtor. This fact appears sufficient in itself to bring the fund within the scope of property of the Debtors' estate. *Compare Carlton House, supra,* 93 B.R. at 866–67 (although funds were deposited by non-debtor tenant into escrow, they were nevertheless within the scope of property of the landlord-debtor's estate).

We recognize that, if the only document pertinent to the sale of the Property were the A/S, the Sellers would be able to make a strong argument that the Debtor's rights in the fund terminated pre-petition and that hence the fund was not property of the Debtor's estate, as the Debtor's breach of the A/S would have triggered the sole event necessary to vest all rights to the fund in the Sellers.

However, the EA was also pertinent to the transaction and was, in fact, the more specific of the documents addressing the parties' rights to the fund in the event of a dispute. It required that, if there were a dispute as to who was entitled to the fund, C & W was obliged to have the rights of the parties ascertained in an appropriate legal proceeding.[2] It was in recognition of this requirement that the CP Action was commenced. However, that Action was, of course, not resolved as of the date of the Debtors' bankruptcy filing.

■ We are quite cognizant of the fact that, on December 4, 1989, the Debtor withdrew his dispute with the Sellers' right to receive the funds. However, this act occurred post-petition. Such an attempt to arguably effect a post-petition transfer, if not void because it was violative of the automatic stay, 11 U.S.C. § 362(a)(1), (a)(3), (a)(6), even though it was an act of the

Debtor himself, *see In re Clark,* 69 B.R. 885, 889, *modified on other grounds,* 71 B.R. 747 (Bankr.E.D.Pa.1987), would be avoidable pursuant to 11 U.S.C. § 549(a)(1), (a)(2)(B). *Compare 222 Liberty Associates, supra,* 110 B.R. at 200, 203–04.

The Sellers vigorously argue that the Debtor's interest in the fund terminated immediately upon his default under A/S, relying heavily upon *In re Newcomb,* 744 F.2d 621 (8th Cir.1984); and *Creative Data Forms, Inc. v. Pennsylvania Minority Business Development Authority,* 72 B.R. 619 (E.D.Pa.1985), *aff'd,* 800 F.2d 1132 (3d Cir.1986).

In *Newcomb,* the trustee sought the turnover of funds placed by the debtor in escrow towards satisfaction of a judgment, pending the debtor's appeal from a judgment in favor of the United States ("the USA"). The condition of the escrow agreement upon which release of the fund depended was the affirmance of the judgment. The judgment was affirmed shortly before the debtor filed for bankruptcy.

A decision in favor of the trustee was reversed. The Court held that, since the *sole* condition for the release of the fund had been accomplished pre-petition, the USA had the right to it.

The most notable difference between *Newcomb* and the instant matter is the operation of the respective escrow agreements relative to each matter. The agreement in *Newcomb* did not condition release of the funds to the USA upon any agreement between the parties; instead, release of the fund was triggered solely by the decision in favor of the USA on the debtor's appeal. *Accord, In re Wey,* 854 F.2d 196, 199 (7th Cir.1988) (agreement of sale expired at its own terms upon debtor-buyer's failure to close). Here, however, in contrast to *Newcomb* and *Wey,* the EA conditions the release of funds on the par-

---

**2.** The Defendants attribute great significance to the fact that the language of the EA relating to C & W's duties is only precatory (It "may" hold the fund until a court determination.). We do not read the EA as giving C & W any real discretion in the distribution process (What else *may* it do with the fund?) Nor did C & W apparently so read the EA, as it has retained the fund to this date. Furthermore, since it still *has* the fund, the issue of whether C & W *could* have released it at some earlier point to the Sellers with impunity is basically an academic question.

ties' unanimous agreement or on a judicial determination in an action initiated by the parties or by the escrow agent. Neither of these conditions transpired pre-petition.

In *Creative Data Forms*, the escrow deposit was made, into an account earmarked for the debtor, by the state authority, and was to be paid to the debtor upon its performance of certain services. These services were never performed. Therefore, the court concluded that the deposits never became, and therefore were not, property of the debtor's estate.

In *Creative Data Forms*, the debtor was, contrary to the facts of the instant case, not the depositor of the funds. It never had title to the funds and never performed the services necessary to acquire any rights therein. The facts of the instant proceeding, in which the Debtor made the deposit and retained rights therein through the date of the instant bankruptcy filing, are clearly distinguishable.

Therefore, we conclude that the escrow fund in issue is indeed property of the Debtor's estate. We further conclude that, as of the date of the filing of the bankruptcy case, all of the conditions set forth in the EA had not occurred and that therefore the Debtor retained legal title and possibly some further equitable interest in the fund.

*4. However, The Sellers Have a Special Interest In The Fund Which The Debtors Have Not Offered To Adequately Protect, Rendering a Turnover Of The Fund To The Debtors' Estate Inappropriate.*

■ In *Whiting Pools, supra*, the Court, while concluding that the property of the debtor levied upon by the IRS was property of the debtor's estate, did not order the property turned over to the debtor. *See* 462 U.S. at 211–12, 103 S.Ct. at 2316–17. Rather, it held that a turnover order, pursuant to 11 U.S.C. § 542(a), *could* issue if *and only if* the debtor provided "adequate protection to [the IRS's] interests." *Id.* at 212, 103 S.Ct. at 2317.

We believe that, by depositing the fund in issue with C & W as a form of security for his performance, the Debtor provided

the Sellers with a special interest in the fund. This special interest was possibly not the equivalent of a security interest. But it did represent a forfeiture of the Debtor's possession of $40,000.00, and it provided the Sellers with a specific source of payment in an amount which the parties' A/S indicated would be determined to be the Sellers' liquidated damages in the event of the Debtor's breach of the A/S. As we held with respect to a similarly segregated fund in *In re Ford*, 78 B.R. 729, 736 (Bankr.E.D.Pa.1987),

[W]hile the special interest of the Movants in the funds here may not be the exact equivalent of a contractual security interest, it is very closely analogous to ... a security interest.... *Compare United States v. Norton*, 717 F.2d 767 (3d Cir.1983) (priority interest of IRS entitled to adequate protection; *Brooks Shoe Mfg. Co. v. United Telephone Co.*, 39 B.R. 980, 983–84 (E.D.Pa.1984) (utility security deposit creates a possessory security interest which allows the deposit to be applied to future services); *In re New York City Shoes, Inc.*, 78 B.R. 426, 430, 431 (Bankr.E.D.Pa.1987) (quasi-security interest acquired by bank through setoff is entitled to adequate protection); and *In re Senlick*, [59 B.R. 296 (Bankr.E.D.Pa.1986)], (landlord's possessory interest in tenant's property entitled to adequate protection).

We engaged in similar reasoning in several cases in which we concluded that Debtors had, at best, bare legal title to certain property of their respective estates, and therefore were not entitled to have that property turned over to their respective estates. *See CS Associates*, 121 B.R. at 960; *Summit Airlines*, 94 B.R. at 370; *Carlton House*, 93 B.R. at 871–72; and *Temp–Way, supra*, 80 B.R. at 702–05. *See also, e.g., Gulf Petroleum, S.A. v. Collazo*, 316 F.2d 257 (1st Cir.1963) (funds deposited into escrow by non-debtor buyer in furtherance of executory realty contract rejected by debtor-seller were recoverable by buyer to the extent that they could be traced); and *In re Aspen Data Graphics, Inc.*, 109 B.R. 677, 680–81 (Bankr.E.D.Pa.1990) (bond

posted by debtor as a security deposit not recoverable by the debtor's estate when the debtor violated the terms of the escrow agreement).

We are not prepared to order that the fund be "turned over" to the Sellers, as they apparently hoped would ensue from their requested relief of our declaration that the fund was not property of the Debtors' estate. There is no joint check to which we fully litigated the rights of the parties or on which we could direct the Debtor to sign off, as in *Temp–Way,* 80 B.R. at 705. The fund has not been withdrawn and already used for its intended purpose, as in *Summit Airlines,* 94 B.R. at 370–72. We do not have before us a proceeding which asked us to make a determination of the rights of the parties to the fund, as in *Carlton House,* 93 B.R. at 872–74. We do not even have before us any longer a motion by the non-debtor parties claiming rights to the fund which support granting it relief from the stay to attempt exercise state law rights over it, as in *CS Associates,* 121 B.R. at 958–60. Therefore, we must leave the parties, as in *Ford,* in "an uneasy stalemate, with the funds in issue in the status of an 'administrative freeze....'" 78 B.R. at 737.

However, we must observe that this stalemate is unlikely to be of long duration. The Debtors' plan of liquidation, listed for a confirmation hearing on March 27, 1991, does not contemplate putting up any adequate protection in exchange for release of the fund. The Debtor has, as of December 4, 1989, decided that he wishes to forfeit any rights he might have to the fund. There is no request before us to dispose of the fund, except the Plaintiff's request that we turn it over to the Debtor's estate, which we are unwilling to do.

However, the Sellers' rights to recover the proceeds in the fund, while not fully litigated, seem rather strong. The Plaintiff may drop its cause and allow the fund to go to the Sellers without the necessity of a further proceeding in this court or any other court to accomplish this purpose in light of this decision. Nevertheless, at this juncture, we only decide that the fund cannot be ordered to be turned over to the Debtors' estate, even though it is property of that estate.

### 5. The Plaintiff's Causes Of Action Under 11 U.S.C. § 547(b) And 11 U.S.C. § 548(a)(2)(A) Lack Merit.

As alternatives to its claims based on 11 U.S.C. § 542(a), the Plaintiff also seeks relief on the basis of 11 U.S.C. § 547(b) (preferential transfer) and 11 U.S.C. § 548(a)(2)(A) (fraudulent conveyance).

One difficulty with the § 547(b) claim is the identity of a transfer within the applicable 90–day pre-petition preference period. *See* 11 U.S.C. § 547(b)(4)(A). The most significant transfer of the fund appears to have occurred when the Debtor made the deposit which created it on February 16, 1989. *See Aspen Data,* 109 B.R. at 682–83. Although it could be argued that a transfer did not occur until the Debtor defaulted in the terms of the A/S on May 22, 1989, it is clear that *nothing* occurred in reference to the fund between May 22, 1989, which is more than 90 days prior to the filing, and October 12, 1989.

Another difficulty with the Plaintiff's preference claim is identification of the "antecedent debt" to which the transfer of February 16, 1989, or any other pertinent date, is related. *See* 11 U.S.C. § 547(b)(2); and *Wey, supra,* 854 F.2d at 200. A final problem is overcoming the principle established in *Lewis v. Diethorn,* 893 F.2d 648, 650–51 (3d Cir.1990), that an attempt to avoid the Sellers' quasi-security interest in the fund would run counter to 11 U.S.C. § 547(b)(5). *See also Aspen Data, supra,* 109 B.R. at 680–83.

Finally, the Plaintiff, in its Brief, devotes considerable attention to the argument that the Debtor's transfer of the fund can be avoided as a fraudulent conveyance. The parties stipulated that the Debtor was insolvent at all pertinent times. 11 U.S.C. § 548(a)(2)(B). The transfer, if ever it was, occurred within the requisite one-year period before the bankruptcy filing. 11 U.S.C. § 548(a).

However, the Plaintiff also clearly bears the burden of proving that the Debtor would receive less than "reasonably equivalent value" if the $40,000 fund were

deemed transferred to the Sellers. 11 U.S.C. § 548(a)(2)(A). *See e.g., In re Pinto Trucking Service, Inc.*, 93 B.R. 379, 388 (Bankr.E.D.Pa.1988). The Plaintiff suggests that this burden is met by the showing that the Sellers lost only their out-of-pocket expenses of about $12,500 in legal fees as a result of the Debtor's breach of the A/S. However, the record strongly suggests that the Sellers lost considerably more in damages attributed to loss of the benefit of their bargain with the Debtor than $12,500. They lost a sale of the Property for $900,000 and were ultimately apparently unable to sell it for even $850,000. We are not prepared to say that the actual damages to the Sellers were in fact $40,000 or more, or that at least a portion of this liquidated sum is not actually a penalty, the collection of which could be deemed improper. *See In re Jordan*, 91 B.R. 673, 680–81 (Bankr.E.D.Pa.1988). However, as we indicated in *Pinto Trucking*, 93 B.R. at 389, it is not our function to "look at the underlying merits" of the transaction very critically in determining determine whether the liquidated damages reflected in the Debtor's $40,000 deposit were the precise equivalent of the Sellers' damages. Rather, we must determine only whether the payment was in the range of a reasonable measure of the Sellers' damages. We believe that it is within that range, and that therefore the absence of a reasonable equivalency between the amount of the fund forfeited as liquidated damages and the Sellers' actual damages has not been proven. Therefore, the Plaintiff cannot succeed in its § 548(a)(2) claim. *See also Wey, supra,* 854 F.2d at 200.

E. CONCLUSION.

An Order granting the Defendants' motion to dismiss the adversary proceeding and denying the Plaintiff the relief which it sought therein will therefore be entered, as well as an order granting the Plaintiff relief from our Order of January 23, 1991, but no more.

ORDER

AND NOW, this 8th day of March, 1991, by agreement of counsel for the parties that this matter could be decided by this court upon the transcript of the trial conducted before the Honorable Joseph L. McGlynn of the district court on May 31, 1990, and upon careful consideration of the parties' respective Briefs filed in this court in accordance with our Order of December 21, 1990, it is hereby ORDERED and DECREED as follows:

1. The Motion of the Plaintiff in the above-captioned adversary proceeding, the OFFICIAL COMMITTEE OF UNSECURED CREDITORS ("the Plaintiff"), seeking to vacate our Order of January 23, 1990, which granted relief from the automatic stay to Defendant CUSHMAN AND WAKEFIELD OF PENNA., INC. ("C & W") is GRANTED, and the said Order is VACATED.

2. The Motion of the Defendants to dismiss the above-captioned adversary proceeding is GRANTED.

3. Judgment is entered in favor of the Defendants named in the proceeding, C & W, FRANK–LYNN REALTY, and MAYTOR H. MCKINLEY, and against the Plaintiff.

4. C & W shall not be required to turn over the escrow fund in its possession in the amount of $40,000 to the Debtors' estate.